EDWIN S. ATWOOD

*vs.*

THE MAINE HUB AND MANUFACTURING COMPANY.

Hancock.    Opinion February 6, 1908.

*Logs and Lumber.    Surveyor.    Scale Bill.    Fraud.    Mistake.    Burden of Proof.*

It is a well settled and familiar rule of law that when parties have agreed upon a surveyor to scale logs, they will in the absence of fraud or mathematical mistake be bound by the scale made by such surveyor.

Where parties have agreed upon a surveyor to scale logs and the correctness of the scale made by such surveyor is attacked on the ground of fraud or mathematical mistake, the burden of proof is on the party making the attack.

In the case at bar, the plaintiff by written contract agreed to cut and haul certain logs for the defendant at $9.00 per thousand feet.    It was also agreed that the survey of the logs should be made by a surveyor to be agreed upon by the parties.    The performance of all the conditions of the contract was admitted.    The correctness of the credits allowed by the plaintiff was not questioned.    The plaintiff claimed to have cut and hauled for the defendant 13074 sticks.    The count was conceded.    The only question was as to the number of feet of lumber contained in the 13074 logs.    In accordance with the terms of the contract, the parties agreed upon one C. M. Stuart as surveyor, who assumed the duties of the position, and his scale bills showed that the plaintiff cut and hauled 728,320 feet of lumber.    The defendant having refused to pay, the plaintiff brought suit against him to recover for cutting and hauling the aforesaid quantity of lumber as shown by the Stuart scale.    The defendant contended that there was both fraud and mathematical mistake in the Stuart scale.    The verdict was for the plaintiff for the full amount with interest from the date of the writ less the credits.    *Held:* That the evidence discloses no reason for setting aside the verdict.

On motion by defendant.   Overruled.

Action of special assumpsit based upon a written contract and brought by the plaintiff to recover for cutting and hauling certain logs for the defendant at $9.00 per thousand feet. The contract on which the action is based is as follows :

"Memorandum of Agreement made and entered into this 26th day of September A. D. 1905, by and between Edwin S. Atwood of Mount Desert, in the County of Hancock and State of Maine of the first part, and the Maine Hub and Manufacturing Company, a corporation duly existing by law and having its place of business in Township Long A., sometimes called West Seboois, in the County of Penobscot and State aforesaid, of the second part :

"Witnesseth that the said party of the first part, for the considerations hereinafter named, agrees to go upon the northeast quarter of Township No. 4, Range 9, North of the Waldo Patent, in the County of Piscataquis, during the ensuing lumber season, and to cut and haul the yellow and silver birch standing thereon, and deliver the same at the mills of the said party of the second part at said West Seboois. No trees are to be cut less than 'ten inches one foot from the ground, and when merchantable, are to be run up to eight inches at top end before cutting off.

"Said party of the first part further agrees not to go to the stump with wagon sleds, and to operate in a careful and prudent manner without strip or waste, or unnecessary injury to the smaller growth. All trees are to be cut one foot from the ground, the snow being removed if necessary, to effect this result. All logs are to be yarded so as to be conveniently scaled on the yards by a scaler hereafter to be agreed upon, all logs to be scaled, when merchantable, full bigness, and so far as possible according to the Penobscot River scale.

"The said party of the second part, in consideration of the faithful performance of this contract, agrees to pay for cutting, hauling and delivering said logs as aforesaid, the sum of nine Dollars per thousand feet, the same to be paid as follows : Three Dollars per thousand feet when the logs are upon the yards, and the balance when they are delivered at the mill as aforesaid, but said final pay-

ment shall not be made until all labor and other lien claims have been paid and satisfied.

"In Witness Whereof the parties have hereunto set their hands, and to a duplicate hereof, the day and year first above written.

(Signed)                                        EDWIN S. ATWOOD.

.          MAINE HUB & MFG. Co. by C. I. Dean, Mgr."

Tried at the October term, 1907, of the Supreme Judicial Court, Hancock County. Plea, the general issue. Verdict for plaintiff for $1720.75. The defendant then filed a general motion to have the verdict set aside.

The case appears in the opinion.

*Deasy & Lynam and Matthew Laughlin,* for plaintiff.

*A. L. Blanchard, Louis C. Stearns and B. W. Blanchard,* for defendant.

SITTING : WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

SPEAR, J. This is an action of special assumpsit based upon a contract by the terms of which the plaintiff agreed to cut and haul certain logs for the defendant at $9.00 per thousand. It was also stipulated that the survey of the logs should be made by a scaler to be agreed upon by the parties. The performance of all the conditions of the contract is admitted. The correctness of the credits allowed by the plaintiff is not questioned. The plaintiff claims to have cut and hauled for the defendant 13074 sticks. The count is conceded. The only question raised in the case is as to the number of feet of lumber contained in these 13074 logs. In accordance with the terms of the contract, the parties agreed upon C. M. Stuart as scaler. He assumed the duties of the position and his scale bills show that the plaintiff cut and hauled 728,320 feet of lumber. The plaintiff's suit is to recover for cutting and hauling this quantity of lumber at $9.00 per thousand. The verdict was for the full amount with interest from the date of the writ, less the credits. The case comes to this court on motion and presents pure questions of fact no exceptions having been taken.

It is a well settled and familiar rule of law that "when parties have agreed upon a scaler to scale logs, they will in the absence of fraud or mathematical mistake, be bound by his scale." *Nadeau* v. *Pingree*, 92 Maine, 196. Under this rule the only avenue of attack upon the verdict open to the defendant is through fraud, or mathematical mistake, in making the survey. To establish this assault, the burden is upon the defendant. He assumes the burden of proving fraud by introducing evidence that Stuart, the scaler agreed upon, had many times repeated, during the period in which he was scaling that the logs were running from 22 to 23 per thousand, net scale, whereas by the scale bill presented, they averaged about 18 per thousand. To corroborate the evidence as to Stuart's admission upon this point, he put in evidence the testimony of two other men, each of whom scaled a certain portion of the logs in question. Of the 13074 sticks, George P. Longley scaled 1191, less than one in ten. His net scale showed "a little over 22" logs per thousand.

Leon A. Nason scaled a portion of these logs and testified that his net scale showed 28 logs per thousand.

Evidence was presented to the jury upon which, under the rules of law, they would be authorized to find affirmatively, that Nason scaled a lot of logs smaller than the average ; the larger logs having been rolled into the mill to be cut up as they were hauled. He also threw out everything not suitable for hubs. This he was not authorized to do. The logs under the contract were to be merchantable, not suitable for hubs. He may therefore have thrown out many logs that should have been scaled, as a log may be merchantable and not fit for a hub.

Stuart denied that he had repeatedly stated to the defendant while he was scaling the logs that they were running from 22 to 23 per thousand. Notwithstanding the evidence of Longley that the net scale of the logs was 22 per thousand and of Nason that it was 28 per thousand, offered by the defendant as tending to show that Stuart's statement that the logs were running from 22 to 23 per thousand was the fact, and raised the probability that he made it, and that he had fraudulently reduced the number from 22 to 23

per thousand to 18, was all presented to the jury, yet their verdict negatived the allegation of fraud. We hardly see how they could have done otherwise. Stuart made the number of logs per thousand, net, 18; Longley 22; Nason 28. It will appear by a comparison of these figures that there is a greater disparity in the number of logs per thousand between Longley and Nason than between Stuart and Longley. Logically, according to the theory of the defense, Longley's survey in comparison with Nason's is more amenable to the charge of fraud than Stuart's in comparison with Longley's. A boy who can read figures can take the full scale of a log. But scaling in the end, is a matter of judgment, and a comparison of these figures simply shows how these men varied in their judgments as to how much a log should be discounted to make it merchantable. We discover no reason for disturbing the verdict upon the charge of a fraudulent scale.

The only evidence of a mathematical mistake is that already presented by the evidence of the three scalers showing the average number of logs, net scale, which they severally found. But which scale shall we take as the mathematically correct one? If Longley was correct, Nason was not; if Nason was correct, Longley was not. As already shown Longley and Nason disagree more than Stuart and Longley disagree. It is evident that neither the scale of Longley nor of Nason can be considered sufficient to show a mathematical mistake in the scale of Stuart. Their figures undoubtedly represent their honest judgment. But inasmuch as Stuart was the scaler agreed upon by the parties, the plaintiff is entitled to his honest judgment. The evidence presented a conflict of judgments. The plaintiff was entitled to the judgment of Stuart, if not fraudulent, and to his scale, if without mathematical mistake. The jury found upon both these propositions in favor of the plaintiff and the verdict should stand.

We think the evidence which breathed into this controversy the breath of life and made it a living soul, may be found in the testimony of Charles I. Dean, the General Manager of the defendant company, who was called in sur-rebuttal to testify in reference to a conversation which he had with Mr. Atwood with regard to

Mr. Nason's scale of the previous year.    Being asked if he could recall the substance of that conversation, he said : "I don't recollect it as they state it here.    Mr. Atwood wanted to haul the lumber by stumpage scale.    I was not satisfied with the stumpage scale the year previous, and I told Mr. Atwood, as I remember it, that I didn't intend for him to haul that lumber at the stumpage scale, that I would look after the stumpage scaler and I didn't intend to have him working on it.

Q.    Why did you make that statement to Mr. Atwood?

A.    Well, I wanted Mr. Atwood to have, as I stated before, every foot of lumber he hauled—merchantable lumber, and to make a long story short, I intended to have more stumpage scale than I had from Mr. Nason,    It was    my intention and I got it and I intended to have    it.    If I hadn't got it there would    have been trouble raised right there.    I was figuring on 22 and 3 logs to the thousand that Mr. Stuart informed me all winter.    And from Mr. Nason I was looking for more.    I was looking for soke 28 or 30, which proved to be 28.

Q.    Stumpage scale?

A.    Yes sir.

Q.    But you didn't care to have Mr. Atwood haul at that scale?

A.    No.    I was satisfied with 22 or 23 logs to the thousand.

Q.    Your idea then was for Mr. Atwood to have more than the stumpage scale?

A.    It was.

Comment upon this testimony with respect to its bearing upon the animus of this defense is unnecessary.    Res ipsa loquitur.

*Motion overruled.*